UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DOUG MESSER                                    CIVIL ACTION

VERSUS                                         NO: 03-3287

TRANSOCEAN OFFSHORE USA, INC.                  SECTION: "R"(5)

### ORDER AND REASONS

Before the Court are plaintiff's motion for reconsideration of the Court's June 6, 2005 order denying his motion for summary judgment and defendant's motion *in limine* to exclude the deposition testimony of Craig Loewer. For the following reasons, the Court DENIES both motions.

### I.   BACKGROUND

Plaintiff Doug Messer was employed by defendant Transocean Offshore as a Jones Act seaman aboard the rig *M/V F100*. On July 1, 2003, one of Messer's superiors, George Thornton, asked Messer to show him the master valve. The master valve is in an area beneath the engine room, and the crew accesses it by descending

through a manhole in the engine room floor and down a ladder. Messer alleges that when he climbed down the ladder, he slipped backwards and hit his lower back and buttocks on the handrail.

After the alleged accident, Messer finished his hitch aboard the rig, and he returned to his home in Defuniak Springs, Florida. While he was at home, he saw nurse practitioner Bobby Kemp for pain in his lower back and buttocks area. Kemp prescribed pain medication, and Messer returned to the rig on July 17, 2003 for his next two-week hitch. Messer completed his hitch and returned home again. On August 7, 2003, while Messer was at home, he injured his back while mowing his lawn. On August 8, 2003, Messer called Transocean to inform the company that he was unable to return for his hitch because of his back. The same day, Messer went to the emergency room, and the doctor prescribed medication and advised Messer to see a specialist. Messer then saw a chiropractor, who referred him to a clinic.

On August 15, 2003, Messer informed Transocean that he was ready to return to work. Transocean asked him to undergo an examination by Dr. Don Langford in Lafayette, Louisiana so that Dr. Langford could determine whether Messer was fit to return to work. Dr. Langford examined Messer and gave him an MRI. While Messer awaited the results of the MRI, Transocean's consultant, Charlie Johnson, recorded an interview with Messer in which they

reviewed his general work history and the lawnmower incident. When the MRI results came back, Dr. Langford determined that Messer's lumbar spine showed abnormalities at levels L3-4 and L4-5. As a result, Dr. Langford concluded that Messer was not fit to return to work.

Messer ultimately went to Dr. Bradley Bartholomew for treatment. Dr. Bartholomew prescribed a course of physical therapy. Messer participated in physical therapy from May 3, 2004 to May 20, 2004. The physical therapy did not relieve Messer's symptoms, and he decided to undergo surgery that had been recommended by Dr. Bartholomew. Messer made formal demand on Transocean to pay for the surgery, but Transocean refused. On November 15, 2004, Messer had a 2-level lumbar fusion.

On November 21, 2003, Messer sued Transocean. Messer demands maintenance and cure and various damages. Messer contends that his accident aboard the rig caused his back injuries that ultimately resulted in his lumbar fusion. On April 4, 2005, Messer moved for partial summary judgment on the issue of maintenance and cure. On June 6, 2005, the Court denied Messer's motion because there was an issue of fact as to whether the alleged accident aboard the rig actually occurred. Messer now seeks reconsideration of the Court's June 6 Order.

Additionally, Transocean moves to exclude the deposition

3

testimony of Craig Loewer, Messer's supervisor at the time of the accident, on the ground that it was "tainted" by an improper *ex parte* communication initiated by plaintiff's counsel.

## II. DISCUSSION

### A. Plaintiff's Motion for Reconsideration

#### 1. Legal Standard

Messer filed his motion for reconsideration within ten days of the Court's June 6, 2005 order. Accordingly, the Court treats plaintiff's request as a Rule 59(e) motion to alter or amend a judgment. *See Rowley, Hansell-Petetin v. Mid-Continent Cas. Co.*, No. Civ.A. 03-3629, 2004 WL 1661203, at *1-2 (E.D. La. July 22, 2004) (treating motion for reconsideration of denial of summary judgment as Rule 59(e) motion); Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). A district court has considerable discretion to grant or to deny a motion under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court's reconsideration of an earlier order is an extraordinary remedy, which should be granted sparingly. *See Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1998 WL 43217, at *2 (E.D. La. Mar. 19, 1998), *aff'd*, 182 F.3d 353 (5th Cir. 1999); *Bardwell v. George G. Sharp, Inc.*, Nos. Civ. A. 93-3590, 93-3591, 1995 WL 517120, at *1 (E.D. La. Aug. 30, 1995).

The Court must "strike the proper balance" between the need for finality and "the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co.*, 6 F.3d at 355. The moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. *See Fidelity & Deposit Co. of Md. v. Omni Bank*, No. Civ. A. 99-1167, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999); *Burma Navigation Corp. v. M/V Reliant Seashore*, No. 94-0795, 1998 WL 781587, at *1 (E.D. La. Aug. 14, 1998); *Fields*, 1998 WL 43217, at *2.

    2.   *Analysis*

Messer argues that newly produced evidence warrants reconsideration of the Court's earlier order. Specifically, Messer relies on an HS&E meeting report dated July 1, 2003, the alleged date of Messer's accident, which shows that there was a complaint about poor lighting at the accident site on that date. Messer also argues that the July 1, 2003 HS&E report undermines the credibility of George Thornton, one of Messer's superiors, who stated that he was unaware of any accident involving Messer

5

and that he did not recall any complaints about lighting or conditions at the accident site.

The July 1, 2003 HS&E meeting report does not warrant reconsideration of the Court's June 6 order.  Assuming for the sake of argument that Messer has sufficiently shown that the report was previously unavailable to him, nothing in the report itself undermines the Court's earlier determination that an issue of fact exists concerning whether Messer was involved in an accident aboard the rig.  Although the report indicates that the lighting at the accident site was discussed at the July 1 HS&E meeting, it does not state that an accident had occurred.  Moreover, Messer signed an acknowledgment on the meeting report stating that he had not had an injury since the last safety meeting.  The July 1 report does not therefore establish that Messer suffered an accident aboard the rig.  Nor does the July 1 meeting report necessarily undermine the credibility of Thornton's statement that he did not recall complaints about the lighting at the accident site.  Nothing in the report indicates that Thornton was actually present at the July 1 meeting when the lighting at the site was discussed.  Furthermore, even if Thornton's credibility is undermined, the introduction of this credibility issue does not eliminate the fact issue standing in the way of summary judgment.  Thus, plaintiff's new evidence does

not provide a basis for reconsidering the Court's denial of his motion for summary judgment. *See Marzoni v. Hyatt Corp.*, No. 01-3175, 2002 U.S. Dist. LEXIS, at *7-8 (E.D. La. Oct. 15, 2002)(denying motion under Rule 59(e) when newly presented evidence did not affect court's earlier decision); *Dupre v. Chevron USA, Inc.*, 930 F. Supp. 248, 250-51 (E.D. La. 1996) (same).

**B.   Defendant's Motion to Exclude**

Transocean moves to exclude the deposition testimony of Messer's supervisor, Craig Loewer.  Transocean asserts that Messer's counsel improperly contacted Loewer outside of the presence of Transocean's counsel.  Transocean argues that this improper communication "tainted" Loewer's deposition testimony. Transocean asks that Loewer's deposition testimony be excluded, but it does not object to Loewer being permitted to testify at trial.

The Court will not exclude Loewer's testimony.  As an initial matter, Transocean fails to show that plaintiff's counsel contacted Loewer.  Loewer said that he was contacted by an attorney, but he was unable to recall the name or affiliation of the person who contacted him, or whether the person actually represented Messer.  Loewer stated that the person indicated that "they were thinking about picking up Doug or representing Doug."

(Def. Mot. to Exclude Ex. A, at 7). While this may suggest that Loewer was contacted by an attorney, the conversation took place before this action was commenced (*see id.* at 8), and Transocean has not shown that plaintiff's counsel was involved with plaintiff's case at that time. Although the Court finds it troubling that plaintiff's counsel neither admits nor denies having contacted Loewer (*see* Pl. Opp. at 2 n.1 ("Undersigned counsel makes no representations one way or the other as to whether any conversations have taken place with Mr. Loewer in the past."), on the record before it, the Court cannot conclude that plaintiff's counsel improperly contacted Loewer.

Transocean also fails to show that the alleged *ex parte* communication influenced Loewer's deposition testimony. Loewer testified at his deposition that the communication consisted of a brief telephone call, approximately a year before his deposition. Loewer said that he was asked a few questions, such as whether he knew Messer (*see* Def. Mot. to Exclude Ex. A, at 7). But Transocean offers no evidence that Loewer was even questioned about Messer's accident. Nor does it offer any other evidence to suggest that Loewer's testimony a year later was influenced by that brief telephone call. Transocean's counsel was aware of the *ex parte* communication at the time of Loewer's deposition. Counsel could have inquired as to the details of the alleged

communication at that time, but he did not.  The Court will not infer that Loewer's deposition testimony was influenced by an *ex parte* communication simply because it corroborates plaintiff's version of the facts.

If in fact there was an ethical lapse by plaintiff's counsel, that lapse can be investigated and dealt with through disciplinary proceedings.

Accordingly, the Court will not exclude Loewer's deposition testimony.

### III. CONCLUSION

For the reasons stated above, the Court DENIES plaintiff's motion for reconsideration and DENIES defendant's motion to exclude Loewer's deposition testimony.

New Orleans, Louisiana, this __4th__ day of August, 2005.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE